STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

SIMON RICHARDSON
Plaintiff

VS.

C.A. NO.: 07 – 3746

WHITMARSH CORPORATION and
BROTHER JOHN McHALE,
JOHN DOE and
JANE DOE, individually and severally

## COMPLAINT

Now comes the Plaintiff, SIMON RICHARDSON, *pro se*, and avers the following:

1. Plaintiff is a licensed teacher, and holds Lifetime Certification to teach English in the State of Rhode Island (Exhibit A);
2. Plaintiff holds a Master's Degree from Rhode Island College (Exhibit B);
3. Plaintiff has over ten years of experience as an English teacher, in public schools;
4. Whitmarsh Corporation provides educational and residential services to youth in custody of the State of Rhode Island;
5. Whitmarsh Corporation is an entity doing business with the State of Rhode Island;
6. Brother John McHale is the Program Director of the Whitmarsh Corporation;
7. In December of 2003, Plaintiff was hired by Brother John McHale as a classroom teacher of Mathematics in the Vision School, or Project Vision, a facility run by Whitmarsh Corporation to serve youth;

8.20.07
OSC

8. At the end of the 2003-2004 school year, a position teaching English in the Vision School or Project Vision became available as a consequence of the retirement of English teacher Janice Meehan;
9. Brother John McHale told the Plaintiff that he, the Plaintiff, would be teaching English at the Vision School or Project Vision in the 2004-2005 school year;
10. On the first day of school in the 2004-2005 school year, Plaintiff was introduced to Kate Fuoroli, who had been hired as the English teacher, to replace Janice Meehan;
11. Upon information and belief, Plaintiff avers Ms. Fuoroli was not certified to teach by Rhode Island or any other state;
12. Upon information and belief, Plaintiff avers Ms. Fuoroli had approximately one year of teaching experience;
13. After Plaintiff met Ms. Fuoroli, Brother John McHale offered Plaintiff the explanation that he could not find a Mathematics teacher and required Plaintiff to continue teaching (out-of-certification) Mathematics;
14. In February of 2006 Brother John McHale informed Plaintiff he would no longer be teaching Mathematics in the Vision School or Project Vision;
15. No reasonable or clear explanation was given for Brother John McHale's decision;
16. No formal evaluation process was used to assess the Plaintiff at Project Vision;
17. No documents were ever given to the Plaintiff to support his removal from the classroom;



PAGE 7/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX 3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

18. No documents were ever given to the Plaintiff to explain his removal from the classroom;
19. Upon information, Plaintiff avers the individual hired to replace him was not certified by the State of Rhode Island to teach Mathematics;
20. Upon information, Plaintiff avers the individual hired to replace him was not certified by the State of Rhode Island to teach anything else;
21. Upon information, Plaintiff avers all the individuals teaching in Project Vision are not certified to teach by the State of Rhode Island;
22. R.I.G.L. § 16-64-1.1 (a) states : "Children placed in foster care by a Rhode Island licensed child placing agency or a Rhode Island governmental agency shall be entitled to the same free appropriate public education provided to all other residents of the city or town where the child is placed";
23. R.I.G.L. § 16-11-1 states "No person shall be employed to teach, as principal or assistant, in any school supported wholly or in part by public money unless the person shall have a certificate of qualification issued by or under the authority of the board of regents for elementary and secondary education";
24. On August 21, 2006, the Providence School Board listed Whitmarsh Corporation twice on its "Consent Agenda" (Exhibit C);
25. As represented on the "Consent Agenda", the "Vision School employs five (5) certified teachers in specific content areas of Mathematics, Social Studies, Science, English, and Special Education" (Exhibit D);
26. This representation appears a second time on the "Consent Agenda" (Exhibit E);



PAGE 8/15 * RCVD AT 8/7/2007 3:32:38 PM [Eastern Daylight Time] * SVR:FAX 3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

27. In addition to representations regarding certified teachers, the "Consent Agenda" establishes the Vision School, or Project Vision, is "supported wholly or in part by public money" as described in R.I.G.L. § 16-11-1;
28. Upon information, Plaintiff avers the Vision School or Project Vision has not always employed five teachers, certified or otherwise;
29. Plaintiff avers it was improper to remove the Plaintiff, a certified teacher, from the classroom, and fill the position with an uncertified teacher;
30. Plaintiff avers this was a violation by Whitmarsh Corporation of R.I.G.L. § 16-64-1.1 (a);
31. Plaintiff avers this was a violation by Whitmarsh Corporation of R.I.G.L. § 16-11-1;
32. Upon information and belief, Whitmarsh Corporation is in continued violation of R.I.G.L. § 16-11-1;
33. Plaintiff then worked "on the floor" for Whitmarsh Corporation, as a residential counselor, at 20 Eighth Street;
34. Ivy Reeve, aka Ivy Booth, is an employee of Whitmarsh Corporation;
35. Ivy Reeve, aka Ivy Booth initially supervised the Plaintiff one day per week;
36. Sometime prior to July 29, 2005, Ivy Reeve, aka Ivy Booth was promoted to a position where she became the Plaintiff's supervisor more than one day per week;
37. Ivy Reeve, aka Ivy Booth, quickly established a pattern of managerial behavior that was hostile and confrontational to some of the staff under her supervision;



PAGE 9/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX_3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

38. Some employees who had been with Whitmarsh for years left following Ivy Reeve, aka Ivy Booth's promotion;

39. Plaintiff suggested to Ivy Reeve, aka Ivy Booth, this managerial behavior was not in the best interests of the youth in her care;

40. Plaintiff suggested this managerial behavior was also not in the interest of her stated goals for staff and youth;

41. Plaintiff had concerns about the safety of the youth in the care of Whitmarsh in general and at Eighth Street in particular, and sought clarification from the Department of Children, Youth, and Families (DCYF);

42. As a consequence of the Plaintiff seeking clarifications, DCYF found Whitmarsh in need of some corrections;

43. Whitmarsh modified certain policies, such as adopting the regular use of two overnight counselors in residential facilities instead of one;

44. In July of 2005, Plaintiff spoke directly to Ivy Reeve, aka Ivy Booth, about some of her conduct, and received a verbal apology;

45. In the same conversation, Plaintiff verbally notified Ivy Reeve, aka Ivy Booth, that he, the Plaintiff, had some health issues and qualified as a protected individual under the Americans with Disabilities Act;

46. Plaintiff explained to Ivy Reeve, aka Ivy Booth that he needed to minimize stress as much as possible;

47. Plaintiff further verbally notified Ivy Reeve, aka Ivy Booth, that he would need at times to excuse himself from non-emergency situations that were either stressful or nauseating;



PAGE 10/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX 3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

48. Ivy Reeve, aka Ivy Booth, agreed that this was a reasonable accommodation;
49. Plaintiff also verbally informed then-Supervisor David Carr;
50. Plaintiff memorialized some of the substance of these conversations in a letter to Brother John McHale dated 7/29/05;
51. Plaintiff attempted to exercise his accommodation on 8/3/05, and Ivy Reeve/Booth attempted to prevent the Plaintiff from doing so;
52. Plaintiff reported for work on 8/4/05, and was sent home by Supervisor David Carr;
53. Plaintiff remained on paid leave for approximately four months;
54. Plaintiff received no documents explaining the cause, purpose, duration, or nature of his leave;
55. Plaintiff received no clear explanation for the leave in any other form;
56. This was in violation of R.I.G.L. § 42-87-3 (2) (v), which prohibits discrimination in the use of "Leave of absence, sick leave, or any other leave";
57. Plaintiff provided Whitmarsh with substantial and uncontradicted medical documentation;
58. Plaintiff was eventually offered a choice between a bizarre (and substantially different from his previous) schedule, or termination;
59. Said schedule required the Plaintiff to work four "night", or third shifts a week, and one 16-hour shift from midnight on Sunday to four p.m. the following Monday afternoon;



PAGE 11/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX 3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

60. Unlike a regular 9-5, forty-hour week, which affords an employee 64 consecutive hours off duty (a weekend), the schedule gave the Plaintiff no more than 55 consecutive hours off duty;

61. The schedule also required the Plaintiff navigate the demands of changing from a nocturnal to a diurnal schedule every week;

62. Plaintiff contends this amounted to a persistent, deliberate weekly disturbance of his personal sleep cycle by placing occupational nychthemeral demands and his natural circadian rhythms in constant conflict;

63. This insured that the Plaintiff would live in a constant state of sleep deprivation;

64. Sleep deprivation is regularly denounced by Human Rights groups as a form of coercion, inhuman treatment, and/or torture;

65. The U.S. State Department's 2000 "Country Reports on Human Rights" explicitly denounced sleep deprivation as torture;

66. The same source identified sleep deprivation as a torture method used by security services in Iran, Jordan, Pakistan, Saudi Arabia, and Turkey;

67. Ivy Reeve, aka Ivy Booth, was promoted again within Whitmarsh Corporation to a job that was never posted for applications;

68. Ivy Reeve, aka Ivy Booth's communication style can suffer from haphazard distribution of documents that are at times didactic and/or accusatory, mention termination, contain spelling and/or factual errors, confusing syntax, and/or incomplete directions, or even retractions;

69. Plaintiff is similarly or better qualified than Ivy Reeve, aka Ivy Booth, with respect to education and experience with youth;
70. Plaintiff should have been considered as a candidate for the position;
71. Plaintiff was deprived of the opportunity to apply;
72. Plaintiff was denied opportunity for promotion;
73. Plaintiff appealed the above incidents in a timely fashion to the Rhode Island State Human Rights Commission;
74. Plaintiff was issued a probable cause finding by the above-named Commission (Exhibit F);
75. Plaintiff avers, as stated in the probable cause notification letter, the Defendants have violated the **Rhode Island Fair Employment Practices Act, Title 28, Chapter 5 of the General Laws of Rhode Island** and **Rhode Island Civil Rights of People with Disabilities Act, Title 42, Chapter 87 of the General Laws of Rhode Island** with respect to the Plaintiff's allegations of **retaliation with respect to terms and conditions of employment and denial of promotion;**
76. Plaintiff was issued a right-to-sue letter by the above-named Commission (Exhibit G);
77. Defendants' actions were either willful, wanton, retaliatory, discriminatory, or malicious, and in violation of Rhode Island Civil Rights and Fair Employment statutes, as well as applicable Federal law;
78. Defendants' actions violated the Plaintiff's rights;
79. Defendants' actions have created a workplace atmosphere that is hostile;



PAGE 13/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX 3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

80. On or about 6/13/07, Defendants gave Plaintiff a tepid evaluation and a 2% raise (as opposed to a possible 4% raise);
81. The processing of Plaintiff's complaint at the Human Rights Commission was named to the Plaintiff as a cause of the tepid evaluation;
82. Plaintiff contends this was another retaliatory action;
83. Plaintiff cites paragraphs 80-81 to support paragraph 82;
84. Upon information and belief, Defendants' actions are also in violation of educational rights of the youth in their care under R.I.G.L. **§ 16-64-1.1 (a)**;
85. Defendants' employees have attempted to silence Plaintiff, most recently informing him at his evaluation on 6/13/07 "What happens at Whitmarsh stays at Whitmarsh";
86. Plaintiff's action is also brought under **§ 42-112-2**;
87. Defendants have admitted the conduct addressed in paragraph 75;
88. Defendants have expressed disdain at the notion of statutory and regulatory compliance;
89. Defendants claim entitlement to covert promotions, an absence of documentation, and other discriminatory practices;
90. As an entity doing business with the state, Defendants have an affirmative duty to comply with all statutory and regulatory requirements;
91. Defendants have an affirmative duty to demonstrate non-discrimination;
92. Defendants' admitted, unjustified actions have harmed the Plaintiff emotionally, psychologically, occupationally, and financially.



PAGE 14/15 * RCVD AT 8/7/2007 3:32:30 PM [Eastern Daylight Time] * SVR:FAX_3/4 * DNIS:999 * CSID: * DURATION (mm-ss):05-06

F

WHEREFORE, the Plaintiff prays this Honorable Court:

1. Grant the Plaintiff a trial by Jury to make the Plaintiff whole;

2. Award the Plaintiff Compensatory and Punitive damages;

3. Any other relief this Honorable Court deems meet and just.

Respectfully submitted,

July 20, 2007

Simon Richardson
Plaintiff

102 Seventh Street
Providence, RI 02906